(No. 94-CC-2290–▮▮▮▮▮)

PERRY SAUNDERS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 30, 1999.*

PERRY SAUNDERS, *pro se.*

JIM E. RYAN, Attorney General (MICHAEL F. ROCKS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Epstein, J.

Claimant, Perry Saunders, an inmate of the Illinois Department of Corrections (IDOC), filed his claim *pro se*, seeking reimbursement for property allegedly damaged due to IDOC's negligence while Claimant was a resident of the Dixon Correctional Center (Dixon). This claim is before us on our Commissioner's report following the hearing of March 6, 1997.

The record in this case includes the transcript of testimony and Respondent's exhibits 1 and 2 (the departmental report). The parties did not file briefs.

### The Facts at Trial

Claimant testified that, on February 13, 1993, there was an electrical problem in housing unit 29 at Dixon in which Claimant's cell number 54 was located. On February 15, 1993, a maintenance man informed the control officer as well as the Claimant that the electrical problem had been repaired and that it was all right to use the outlets. Electrical problems recurred in unit 29 on March 4, 1993. After a maintenance man checked the electricity, Claimant was informed that it was all right to turn his television set on. When he turned the television set on, smoke emerged. Claimant and other inmates whose property had been damaged then informed the administration staff of the problem. A Ms. MacRunnels told them to take their property over to personal property to be

evaluated. Claimant was informed that his television could not be repaired.

Claimant further testified he filed a grievance and was initially informed that he would receive 60 to 70 percent of what the television was originally worth. However, when that decision was sent to Springfield for final approval, it was denied because it was determined the damage had been caused by an act of God.

Respondent produced William E. Shaw, the chief engineer of the maintenance department at Dixon. He testified that the electrical problem in unit 29 on March 4, 1993, was determined to have been caused by Commonwealth Edison due to a surge or interruption of service. He further testified he was not aware of any equipment on the grounds at Dixon that could have caused the electrical problem.

Respondent's exhibit 2, the departmental report, contains a copy of an incident report prepared by Captain Dempsey on March 3, 1993, which reports a power surge in housing unit 29 that affected Claimant's cell, number 54. It further indicates that Claimant's television was damaged by the surge.

The departmental report contains a copy of a memorandum by Colleen MacRunnels, dated March 9, 1993, that instructed the Claimant to take the equipment damaged on March 4th to Personal Property to be inspected. A copy of a grievance report prepared by Ms. MacRunnels on April 22, 1993, also appears in the departmental report, which recommends that Claimant be compensated for damage to his television.

The departmental report contains a copy of a letter dated December 6, 1993, to Claimant from Michael W. Carter, which states in relevant part:

"This is to acknowledge receipt of your correspondence on November 8, 1993, in which you desire to grievance an issue of personal property damage. You had indicated in an incident at the Dixon Correctional Center on March 4, 1993, there was electrical power outage. You indicated there were many electrical items that were (sic) due to this outage. You reported these specific items in your grievance and indicated your desire to have these items replaced or be reimbursed.

This office consulted the records of the Tort Claim Coordinator which indicated the issue had been forwarded through the Tort Claim process. It was also noted the Tort Claim Coordinator had denied requests for reimbursement to all individuals involved with this type of occurrence in accordance with Administrative Directive 01.06.110. It was indicated the issue was covered under Section 2,F,3, which states in part, "* * * liability for property loss shall normally be limited to loss as a result of staff conduct or lack of supervision * * *.'

Since this issue is addressed through the Administrative Directive and your issues of property loss do not fit a reimbursement category, your claim was denied. This office notes there is no other substantiation to indicate reimbursement that is fitting in the case of the electric outage."

A copy of Administrative Directive 02.06.110, section 2.F.3, referred to in the foregoing letter, is contained in the departmental report, and states as follows:

"Liability for property loss shall normally be limited to loss as a direct result of staff conduct or lack of supervision. Inmates shall not normally be reimbursed for the following without the prior written approval of the Director:

a. Unauthorized items or items loaned, traded, sold, or bought from other inmates.

b. Property losses as a result of riots, general disturbances, fires, or natural disasters.

c. Losses or theft exclusively caused by other inmates.

d. Losses of property which was abandoned by the inmate during an unauthorized absence such as an escape, runaway, attempted escape, attempted runaway, or failure to return."

The record indicates that a power surge did indeed occur on March 4, 1993, which damaged Claimant's television. The testimony of Chief Engineer Shaw indicates the power surge was determined to have been caused by Commonwealth Edison and not by any faulty IDOC equipment at Dixon.

Claimant's television was damaged due to the power surge, but the power surge was not caused by, nor the

fault or negligence of, IDOC. Claimant may well have been informed—or misinformed—that it was all right to use his television prior to it being damaged by the power surge. However, the State is not an insurer of the private property of inmates, nor are IDOC personnel predictors of the stability of electrical power supplied by public utilities, and Claimant should have known better than to rely on such predictions.

Moreover, as this Court has held in a number of "power surge" cases, Claimants like this one, being presumptively of normal intelligence, should be aware of the existence, and availability at nominal cost, of surge protectors, which offer protection for electrical equipment from power surges.

This Claimant has failed to prove any negligent acts or omissions on the part of the Respondent that caused or contributed to his property damage. For this reason, this claim must be denied.

Conclusion

This claim is denied and forever barred.